IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER SCOTT,                          :
ANNE SCOTT, husband and wife,
          Plaintiffs                  :

          vs.                         :      CIVIL NO. 1:CV-07-2274

                                      :

STEPHEN C. TURNER,
NANCY HOKE TURNER,                    :
          Defendants


*M E M O R A N D U M*

*I.    Introduction*

          Plaintiffs, Peter and Anne Scott ("Scotts"), filed
this action against Stephen C. and Nancy Hoke Turner
("Turners"), alleging a breach of an agreement to purchase real
estate.  The case was initiated by a complaint filed by the
Plaintiffs in the Court of Common Pleas of Adams County,
Pennsylvania on November 20, 2007.  Defendants removed the case
to this Court pursuant to 28 U.S.C. § 1441 and § 1446 on the
basis of diversity jurisdiction.  Defendants filed an answer,
affirmative defenses and a counterclaim.[1]  We now consider the
parties' cross-motions for summary judgment.

          We will examine the motion under the well-established
standard.  *Lawrence v. City of Philadelphia,* 527 F.3d 299, 310
(3d. Cir. 2008).  "The rule is no different where there are

---

[1]  We have jurisdiction over the counterclaim pursuant to
28 U.S.C. § 1367.

cross-motions for summary judgment." *Id.*  Upon careful review of the briefs and the record, we will grant Defendants' motion for summary judgment and enter judgment in favor of the Turners and against the Scotts.

## II.   *Factual Background*

### A.   *Scotts Acquisition of Real Estate*

In December of 1993, Plaintiffs purchased 10 acres of real estate in Freedom Township, Pennsylvania from Bradley and Mary Yohe (the "Yohes"), and subsequently, constructed a residence on the property.  The only access to the property was by a private, gravel right-of-way approximately 2,400 feet long and 16 feet wide, which provided ingress and egress to Pumping Station Road.  (Def.'s Statement of Material Facts ¶ 10 ("SMF")).

The right-of-way was laid out in a subdivision plan proposed by the Yohes in 1993.  Under Freedom Township's Subdivision and Land Development Ordinance ("Ordinance"), the drive would have to meet design and improvement standards which required a 50 foot right-of-way and a cartway of 32 feet from curb to curb.  Freedom Township, Pa., Subdivision and Land Development Ordinance § 403(a)-(b)(2001).

The Yohes sought and received from the Township a variance to the requirements of the Ordinance, subject to

conditions.   (Pls.' SMF ¶ 12).   The variance, recorded in

October of 1993, required:

> a.  No more than three residences shall be
> served by the right-of-way;
>
> b.  The right-of-way was required to be at
> least 16 feet wide, covered by 5 inches of
> compacted, crushed stone, and to include
> macadam for a distance of 25 feet from
> Pumping Station Road;
>
> c.  The right-of-way, where it crosses a
> minor stream, had to be constructed in
> accordance with guidelines established by
> Army Corp of Engineers.
>
> d.  Maintenance of the right-of-way will be
> shared equally by the owners of the three
> residences.

(Doc. 19, Pls.' Ex. 4).   The variance contained two conditions

on which it would terminate.   First, the variance was limited to

the time during which the Yohes owned "all of the land shown on

the land development plan and shall not extend to subsequent

owners." *Id.*   Second, the variance provided that "[i]n the event

the acreage shown on the attached land development plan is

further subdivided for more than three (3) residential building

lots, then this variance shall be void and the cartway in

question shall be made to conform to township specifications."

*Id.*

In 2005, Plaintiffs purchased additional real estate

("Rosensteel lot") abutting their land.  (Pls.' SMF ¶ 26).

Access was by a private right-of-way that provided ingress and

egress to Cunningham Road.  This right-of-way was created via

3

two easement agreements.  The first easement was recorded in September of 2002.  (Pls.' SMF ¶ 29).  This easement, which serviced two other lots in addition to the Rosensteel lot, required the property owners of the three benefitted properties to maintain the driveway as well as indemnify the grantors against any loss or damages suffered by use or maintenance of the driveway.  (Pls.' SMF ¶ 31, Ex. 9).  The second easement, recorded in August of 2005, further extended the existing driveway.  (Pls.' SMF ¶ 32-33).  This easement also provided for the indemnification of the grantors against losses or damages sustained by use or maintenance of the driveway.  (Pls.' SMF ¶ 33, Ex. 10).

    B.  *The Land Sale Agreement with Turners*

On October 12, 2006, the Plaintiffs entered into an Agreement of Sale ("Agreement") with the Defendants whereby the Scotts agreed to sell their 10 acre lot and the Rosensteel lot for the sum of $1,250,000.  (Doc. 19, Pls.' Ex. 2).  The Agreement was amended by two addenda dated October 12,2006 and two addenda dated January 12, 2007 ("Addenda").  (Defs.' SMF ¶ 9).  Settlement was to occur on or before December 31, 2007, and the Turners were to give a minimum of 50 days notice to settle. (Defs.' SMF ¶ 9).  The Agreement required the Plaintiffs to convey the premises:

> [F]ree and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER: Existing building restrictions, ordinances, easements

4

> of roads, easements visible upon the ground,
> privileges or rights of public service
> companies, if any; otherwise the title to
> the...real estate shall be good and
> *marketable* and such as will be insured by a
> reputable Title Insurance Company at the
> regular rates....

(Doc. 22, Defs.' Ex. B at p. 2 ¶ 12(a))(emphasis added).

Defendants made a $50,000 deposit payment which was placed in an interest bearing escrow account.  (Defs.' SMF ¶ 8).  The Agreement also included copies of the final subdivision plan and covenants which referred to the 1993 variance but did not include a copy of it.  (Pls.' SMF ¶ 39).

Defendants obtained a title insurance commitment effective July 23, 2007.  (Doc. 22, Defs.' Ex. D).  The title insurance listed the variance as an exception from coverage, unless it is disposed of to the satisfaction of the insurer.  (Defs.' SMF ¶ 21).  The title insurance also acknowledged the existence of the two easements.  Plaintiffs had not provided copies of these documents to the Defendants.  (Defs.' SMF ¶ 30).  Additionally, Defendants alleged the Scotts failed to provide "all known documentation pertaining to the right-of-way" as required by the Addenda.  (Defs.' Br. In Supp. For Summ. J. at 4).

In letters dated August 8th and October 18th of 2007, Defendants' notified Plaintiffs of alleged marketability defects due to the variance and easements.  (Defs.' SMF ¶ 31).  Defendants demanded that the defects be cured before November

5

11, 2007.    Plaintiffs disagreed that there were any defects that would effect marketability of title.  (Pls.' SMF ¶ 49).

On November 15, 2005, the Board of Supervisors of Freedom Township considered the variance and the right-of-way agreement.  (Pls.' SMF ¶ 51).  The minutes of the meeting indicate that the Plaintiffs sought "reaffirmation that the variance was still intact."  (Doc. 19, Pls.' Ex. 19, p. 3). Plaintiffs allege that the Board of Supervisors reaffirmed the variance despite the conveyances by the Yohes.  (Pls.' SMF ¶ 55).

On February 8, 2008, Plaintiffs re-listed their property for sale at a price of $895,000.  (Pls.' SMF ¶ 59, Pls.' Ex. 24).  They entered into an agreement of sale and sold the property on March 31, 2008 at the list price.  (*Id.* at ¶ 60, Pls.' Ex. 25).

III.  *Discussion*

Defendants argue that Plaintiffs breached the Agreement by failing to provide copies of required documents, and by being unable to deliver marketable title due to an expired variance and easements on the property.  (Defs.' Br. in Supp. of Summ. J. at 1).  Plaintiffs counter by arguing they were able to provide marketable title, and the Defendants breached by not closing on the property.  (Pls.' Br. in Supp. of Summ. J. at 10).  We agree with Defendants that the Scotts were

6

unable to provide marketable title due to the expiration of the variance agreement.

The variance agreement terminated when the land was further subdivided to allow for more than three building lots. As indicated above, the variance terminated when either the land is no longer owned entirely by the Yohes or the land was further subdivided to allow for more than three residential building lots. Defendants pleaded in their counterclaim, and Plaintiffs admitted in their answer, that "the land shown on the land development plan is currently subdivided into four lots and could be further subdivided, thereby also causing the termination of the variance." (Defs.' Countercl. ¶ 27; Pls.' Answer to Countercl. ¶ 27). Plaintiff, Anne Scott, in her deposition testimony indicated that the land had been divided into four lots. (*See* doc. 25, Defs.' Ex. A, p. 20-22). Plaintiffs counter by arguing that the Board of Supervisors upheld the ordinance in November of 2007. However, this argument fails in light of the record of the meeting. The record indicates the Township included a letter, sent by the Township solicitor, in the minutes of the meeting. (doc. 19, Pls.' Ex. 19, p. 3). This letter indicated that the solicitor agreed that the variance was effective as to subsequent purchasers of the property, but did not address the termination provision at issue here. (doc. 19, Pls. Ex. 21). The provision in the variance which provided for termination when the land was

further subdivided was not addressed by the Township at its
November 2007 meeting.  Without further clarification from the
Township, we must construe the variance as written.  Pursuant to
the terms of the variance, it terminated when the land was
further subdivided.  We conclude the existing right-of-way no
longer complies with the Ordinance.

In *Barter v. Palmerton Area School Dist.*, 581 A.2d 652
(Pa. Super. 1990), the Pennsylvania Superior Court held:

> A marketable title is one that is free from
> liens and encumbrances and 'which a
> reasonable purchaser, well informed as to
> the facts and their legal bearings, willing
> and ready to perform his contract, would, in
> the exercise of that prudence which
> businessmen ordinarily bring to bear upon
> such transactions, be willing to accept and
> ought to accept.'

*Id.* at 654 (quoting 77 Am.Jur.2d Vendor and Purchaser, § 131
(1975)).  A title is not marketable if the grantee "may be
exposed to the hazard of a lawsuit."  *Id.; Motley v. De
Vincentis Construction Co.,* 164 A. 111 (Pa. Super. 1933).
However, the mere possibility of some future suit does not
prevent title from being good and marketable.  *Id.*  In other
words, marketable title is a title free from all reasonable
doubt, but not necessarily all doubt.  *Siddall v. Painter*, 84
Pa. D. & C. 591, 595-96 (Pa.Com.Pl. 1953).

The Turners may be exposed to the hazards of a lawsuit
by acquiring the Scotts' property.  They assert that the need to
upgrade the right-of-way would impose financial obligations on

them as well as subject them to potential lawsuits by the
Township.  Plaintiffs respond that any obligation for
improvements would not fall to the Turners or other landowners,
but rather to any applicant seeking further subdivision.  (Pls.'
Br. In Opp. To Summ. J. at 11).  However, the Pennsylvania
Municipalities Planning Code ("MPC") contradicts Plaintiffs'
arguments.  Pennsylvania law grants townships enforcement powers
under the MPC.  53 Pa. C.S. §§ 10515.1, 10515.3.  The MPC
provides that a township may "institute and maintain appropriate
actions by law or in equity to restrain, correct or abate
violations" of the Ordinance.  53 Pa. C.S. § 10515.3(a).
Additionally, the MPC allows for the impositions of fines
against any person who has violated the provisions of the
Ordinance.  53 Pa. C.S. § 10515.3.  In essence, Defendants would
be purchasing a potential lawsuit by Freedom Township designed
to bring the right-of-way into compliance with the Ordinance.

Plaintiffs attempt to draw a distinction between the
condition of title and the physical condition of the land.
(Pls.' Br. in Supp. of Summ. J. at 16).  In support, Plaintiffs,
citing *Rood v. Commonwealth Land Title*, 936 A.2d 488 (Pa. Super.
2007), argue that the need to improve the right-of-way goes only
to the physical condition of the land and does not render title
unmarketable.  (Pls.' Br. in Supp. of Summ. J. at 16).  In *Rood*,
an abandoned septic tank that diminished the value of the
property in question was determined not to affect marketability.

*Rood*, 936 A.2d at 496.  However, the instant case involves not a diminution in market value, but rather the exposure of Defendants to litigation.  In *Motley*, *supra*, the Superior Court held title to land unmarketable when a house constructed thereon was in violation of a zoning ordinance.  The court noted that "title was not marketable, not because of an existing land zoning ordinance, but because a building had been constructed upon the lot in violation of the that ordinance."  *Id.* at 112.  The right-of-way here was initially permitted by the variance; however, it is now in violation since the variance has terminated.  Like the purchasers in *Motley*, the Turners cannot take possession without being in violation of the Ordinance and therefore subject to suit.

A reasonable purchaser in the Defendants position would have reasonable doubt as to marketability of title.  Based on the Plaintiffs' inability to provide a marketable title, we conclude that Defendants were justified in terminating the sales agreement.

IV.   *Damages*

The Turners are seeking recovery of their $50,000 deposit as damages.  (Defs.' Br. in Supp. of Summ. J. at 14).  The sales agreement contains a clause that allows the buyers to recover any deposit money.  (doc. 22, Defs.' Ex. B at p. 3 ¶ 21).  Since Plaintiffs breached the agreement by failing to

provide a marketable title, we find that the Turners are
entitled to the return of the deposit money and any interest
earned thereon.

      We will issue an appropriate order.


                 /s/William W. Caldwell
                 William W. Caldwell
                 United States District Judge

Date: October 29, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER SCOTT,                          :
ANNE SCOTT, husband and wife,
     Plaintiffs               :

     vs.                      :      CIVIL NO. 1:CV-07-2274

                                :
STEPHEN C. TURNER,
NANCY HOKE TURNER,                    :
     Defendants

*ORDER AND JUDGMENT*

AND NOW, this 29th day of October, 2008, upon consideration of the parties' cross-motions for summary judgment (docs. 18 & 21), filed July 11 and July 25, 2008 respectively, and pursuant to the accompanying Memorandum, it is ordered that:

    1.  Defendants' Motion for Summary Judgment is granted;

    2.  Plaintiffs' Motion for Summary Judgment is denied;

    3.  Judgment is entered in favor of Defendants Stephen C. Turner and Nancy Hoke Turner, and against Plaintiffs Peter Scott and Anne Scott in the sum of $50,000.00, with interest earned thereon.

    4.  The Clerk of Court shall close the file.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge